Michael Kind, Esq. (SBN: 13903)
KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (800) 400-6808 x7
FAX: (800) 520-5523
mkind@kazlg.com

Sara Khosroabadi, Esq. (SBN 13703)
HYDE & SWIGART
7854 W. Sahara Avenue
Las Vegas, NV 89117
Phone: (619) 233-7770
Fax: (619) 297-1022
sara@westcoastlitigation.com

David H. Krieger, Esq. (SBN: 9086)
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
Fax: (702) 385-5518
dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff Keith H. Asbell*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Keith H. Asbell,<br><br>    Plaintiff,<br>v.<br><br>Synchrony Lending, Inc., Wells Fargo Home Mortgage, Equifax Information Services LLC and Trans Union LLC,<br><br>    Defendants. | Case No.: 2:17-cv-1212<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Keith H. Asbell ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Synchrony Lending, Inc. ("Synchrony"), Wells Fargo Home Mortgage ("WFHM"), Equifax Information Services LLC ("Equifax") and Trans Union LLC ("Trans Union") (jointly as "Defendants"), with regard to erroneous reports of derogatory credit information to national

reporting agencies and Defendants' failure to properly investigate Plaintiff's disputes.

4. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 28 U.S.C. §1331; *Smith v. Community Citibank, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

6. This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

7. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

8. Plaintiff is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant Synchrony is a corporation doing business in the State of Nevada.

10. Defendant WFHM is a corporation doing business in the State of Nevada.

11. Defendant Equifax is a corporation doing business in the State of Nevada.

12. Defendants Synchrony and WFHM are furnishers of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

13. Defendants Trans Union LLC and Equifax regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to

KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117

third parties and use interstate commerce to prepare and/or furnish the reports. Equifax and Trans Union LLC are each a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

14. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## GENERAL ALLEGATIONS

15. On or about June 20, 2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 et seq. Plaintiff's case was assigned Case Number 10-21473-btb (the "Chapter 13" or "Bankruptcy").

16. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

17. On March 22, 2011, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

18. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

19. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

20. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

21. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

22. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on December 22, 2015.

23. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

24. However, Defendants either reported or caused to be reported inaccurate information as discussed herein after Plaintiff's debts were discharged.

25. Defendants' reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on Defendants' pre-bankruptcy contract terms with Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate."

26. The adverse information reported by Defendants was based on each respective Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan. Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

27. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

28. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

29. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

30. On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

31. On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

32. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See, e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

33. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *Id.*., with the following relevant exceptions:

   a. <u>Current Balance</u>
      i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id.*

  ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

  iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

 b. <u>Scheduled Monthly Payment Amount:</u>

  i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id*. at 6-21.

  ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

  iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id*.

34. Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

35. In turn, each of the credit reporting agencies named herein, rereported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

36. To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

37. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually

accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## — THE EQUIFAX VIOLATIONS —

### SYNCHRONY AND EQUIFAX MISREPORTED CREDIT INFORMATION RE: ACCOUNT NO. **0379

38. On or about June 29, 2016, Plaintiff disputed Synchrony's inaccurate reporting, including an inaccurate "date of Major Delinquency 1st Reported" ("DLA") pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Synchrony.

39. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be removed as follows:

> You are inaccurately reporting that my "Date Major Delinquency 1st Reported" (hereinafter "DLA") was: August 2010 when I filed Bankruptcy on 6/20/2010. The DLA date should be no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date Synchrony Lending Inc. is causing the DLA to remain on my credit report longer than allowed under the FCRA's obsolescence period and my account is being illegally "re-aged." Accordingly, please immediately correct this account to report the DLA no later than the month in which my Bankruptcy was filed. If you do not immediately make this correction on my credit report, please include a 100 word statement in my credit report of all of the disputed information contained in this letter regarding this account.

40. Upon receiving that letter, Equifax timely notified Synchrony of Plaintiff's dispute, but Equifax and Synchrony continued reporting inaccurate information.

41. Equifax and Synchrony were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

42. On or about July 12, 2016, Plaintiff received notification from Equifax that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

43. A reasonable investigation by these Defendants would have indicated that Plaintiff's DLA should have been no later than the bankruptcy discharge date.

44. Equifax and Synchrony failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

45. Equifax and Synchrony continued to report inaccurate derogatory information on Plaintiff's report. Specifically, Equifax and Synchrony continued to report a DLA in August 2010 even though Plaintiff filed for bankruptcy in June 2010. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date, Synchrony caused the DLA to remain on Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). Synchrony's "re-aging" of its debt is illegally causing the trade line to remain on Plaintiff's credit report longer than legally permissible.

46. Equifax and Synchrony, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

47. Equifax and Synchrony failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

48. Due to the failure by Equifax and Synchrony to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15

U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

49. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Equifax and Synchrony by communicating Plaintiff's dispute with Equifax and Synchrony were fruitless.

50. Equifax and Synchrony willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

51. Also as a result of the continued inaccurate and negative reporting by Equifax and Synchrony, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to Plaintiff's creditworthiness, and emotional distress, including humiliation, fear, stress and anxiety.

52. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Equifax and Synchrony failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## WFHM AND EQUIFAX MISREPORTED CREDIT INFORMATION
## RE: ACCOUNT NO. **0356

53. On or about June 29, 2016, Plaintiff disputed WFHM's inaccurate reporting, including an inaccurate balance of February 2016: $356,740.00 and an inaccurate DLA pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by WFHM.

54. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be removed as follows:

> You are inaccurately reporting that my "Date Major Delinquency 1st Reported" (hereinafter "DLA") was: November 2015 when I filed Bankruptcy on 6/20/2010. The DLA date should be no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date Wells FARGO Home Mortgage is causing the DLA to remain on my credit report longer than allowed under the FCRA's obsolescence period and my account is being illegally "re-aged."  Accordingly, please immediately correct this account to report the DLA no later than the month in which my Bankruptcy was filed.  If you do not immediately make this correction on my credit report, please include a 100 word statement in my credit report of all of the disputed information contained in this letter regarding this account.

55. The letter further stated:

> You are reporting incorrect balances due for:
> February 2016           $356,740.00
>
> Since I discharged Wells Fargo Home Mortgage's debt, there was a $0 balance due any time after the discharge date and reporting the above balances were due was inaccurate in-itself resulting from the Bankruptcy discharge, since I owed $0 after my discharge.  Please immediately correct these inaccuracies by updating the account to report a $0 balances with a status of "current" or "discharged in Bankruptcy" at any time after the discharge date.  If you do not immediately make this correction on my credit report, please include a 100 word statement in my credit report of all of the disputed information contained in this letter regarding this account.

56. Upon receiving that letter, Equifax timely notified WFHM of Plaintiff's dispute, but Equifax and WFHM continued reporting inaccurate information.

57. Equifax and WFHM were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

58. On or about July 12, 2016, Plaintiff received notification from Equifax that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

59. A reasonable investigation by these Defendants would have indicated that Plaintiff's DLA should have been no later than the bankruptcy discharge date and that WFHM and Equifax were reporting an inaccurate balance.

60. Equifax and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

61. Equifax and WFHM continued to report inaccurate derogatory information on Plaintiff's report. Specifically, Equifax and WFHM continued to report a DLA in November 2010 even though Plaintiff filed for bankruptcy in June 2010. The DLA date should have been no later than the Bankruptcy filing date. By reporting a DLA later than the Bankruptcy filing date, WFHM caused the tradeline to remain on Plaintiff's credit reported longer than allowed under the FCRA's obsolescence period codified at 15 U.S.C. § 1681c(a). WFHM's "re-aging" of its debt is illegally causing the trade line to remain on Plaintiff's credit report longer than legally permissible.

62. Equifax and WFHM also reported an inaccurate scheduled payment amount of $1,776 for March 2016, even though these defendants also reported that the balance amount was $0. Equifax's and WFHM's reporting was therefore inaccurate in and of itself because they reported a $0 balance on the one hand and scheduled payment amounts on the other hand.

63. Equifax and WFHM, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

64. Equifax and WFHM failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

65. Due to the failure by Equifax and WFHM to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

66. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Equifax and WFHM by communicating Plaintiff's dispute with Equifax and WFHM were fruitless.

67. Equifax and WFHM willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

68. Also as a result of the continued inaccurate and negative reporting by Equifax and WFHM, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses in challenging the Defendants' wrongful representations, damage to Plaintiff's creditworthiness, and emotional distress, including humiliation, fear, stress and anxiety.

69. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Equifax and WFHM failed to take the appropriate measures as required under 15 U.S.C. §§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

— THE TRANS UNION VIOLATIONS —

TRANS UNION MISREPORTED CREDIT INFORMATION

- THE MAY 2016 DISPUTE -

70. In a Trans Union credit report dated May 19, 2016, Trans Union inaccurately reported that there was an outstanding civil judgment against Plaintiff with an

"individual debt" in the amount of $7,175.  This was inaccurate because Plaintiff received a discharge in December 2015 and no longer had an outstanding civil judgment and did not owe $7,175.

71. On June 29, 2016, Plaintiff disputed Trans Union's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Trans Union, in writing, of the incorrect and inaccurate credit information.

72. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

73. Trans Union was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i

74. However, Plaintiff never received any notification from Trans Union that Trans Union investigated or reinvestigated Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(6).

75. A reasonable investigation by TransUnion would have indicated that Plaintiff did not have any balance for this debt.

76. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

77. Trans Union re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, upon information and belief, Trans Union re-reported the that Plaintiff owed an outstanding balance for the judgment when the judgment was, in fact, discharged in Plaintiff's bankruptcy.

78. Trans Union, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

79. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

80. Due to Trans Union's failure to reasonably investigate, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

81. Trans Union's continued inaccurate and negative reporting of the Debt in light of their knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

82. Also as a result of Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, higher interest rates, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, emotional distress and mental anguish and harm to Plaintiff's reputation.

83. By inaccurately reporting account information after notice and confirmation of their errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

### - THE AUGUST 2016 DISPUTE -

84. On August 11, 2016, Plaintiff, again, disputed Trans Union's reporting regarding the debt pursuant to 15 U.S.C. § 1681i by notifying Trans Union, in writing, of the incorrect and inaccurate credit information.  Plaintiff disputed Trans Union's inaccurate reporting that there was an outstanding civil judgment against Plaintiff with an "individual debt" in the amount of $7,175. This was inaccurate because Plaintiff received a discharge in December 2015 and no longer had an outstanding civil judgment and did not owe $7,175.

85. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

86. Trans Union was required to conduct a reinvestigation into this specific debt on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i

87. On August 26, 2016, Plaintiff received a notification from Trans Union that Trans Union investigated or reinvestigated Plaintiff's dispute, as required under 15 U.S.C. § 1681i(a)(6).

88. A reasonable investigation by TransUnion would have indicated that Plaintiff did not have any balance for this debt.

89. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

90. Trans Union re-reported the inaccurate derogatory information on Plaintiff's report. Trans Union re-reported the that Plaintiff owed a balance of $7,175 as "individual debt" even though the debt was, in fact, discharged in Plaintiff's bankruptcy.

91. Trans Union, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

92. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

93. Due to Trans Union's failure to reasonably investigate, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

94. Trans Union's continued inaccurate and negative reporting of the Debt in light of their knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for statutory damages.

95. Also as a result of Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation credit denials, higher interest rates, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to her creditworthiness, emotional distress and mental anguish as well as physical injuries and damages to Plaintiff's reputation.

96. By inaccurately reporting account information after notice and confirmation of their errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681, *ET SEQ.*

97. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681, *et Seq.*.

99. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

KAZEROUNI LAW GROUP, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117

100. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and

- Any other relief the Court may deem just and proper.

## TRIAL BY JURY

101. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED this 28th day of April 2017.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Michael Kind
Michael Kind, Esq.
7854 W. Sahara Avenue
Las Vegas, NV 89117
*Attorneys for Plaintiff*